# EXHIBIT A

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
tfriedman@ toddflaw.com
abacon@ toddflaw.com
*Attorneys for Plaintiff*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
6/12/2025 7:43 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF LOS ANGELES
### UNLIMITED JURISDICTION

|  |  |
|---|---|
| MICHAEL DOTSON, individually, and on behalf of other members of the general public similarly situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>BRICKELL BRANDS, LLC,<br><br>     Defendant. | Case No.  25STCV16963<br><br>**CLASS ACTION COMPLAINT**<br><br>(1)  Violation of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and<br>(2)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)<br><br>(Amount to Exceed $35,000)<br><br>**Jury Trial Demanded** |

Plaintiff MICHAEL DOTSON ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## PRELIMINARY STATEMENTS

1.    This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq.*, and Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*, resulting from the illegal actions of Defendant, in intentionally labeling its products with false and misleading claims that they are "All Natural", when Defendant's products contain synthetic ingredients. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2.    This class action is brought pursuant to California Code of Civil Procedure § 382. All causes of action in the instant complaint arise under California statutes.

3.    This court has personal jurisdiction over Defendant, because Defendant does business within the State of California and County of Los Angeles.

4.    Venue is proper in this Court because Defendant does business *inter alia* in the county of Los Angeles and a significant portion of the conduct giving rise to Plaintiff's Claims happened here.

## PARTIES

5.    Plaintiff is an individual and citizen of California, who was at all relevant times residing in Los Angeles, California.

6.      Defendant is a Maine limited liability company whose principal place of business is located in South Portland, Maine.

7.      At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of personal care products.

## FACTS COMMON TO ALL COUNTS

8.      Defendant manufactures, advertises, markets, sells, and distributes personal care products throughout California and the United States under brand name Brickell.

9.      During the Class Period Defendant sold the following products (the "Products") labeled as "All Natural" but which actually contain at least the following synthetic ingredients:

    a.  Reviving Hyaluronic Acid Serum: sodium PCA, ethylheylglycerin, potassium sorbate, sodium benzoate;

    b.   Styling Hair Powder: sorbitan cprylate;

    c.  Restoring eye serum treatment: sodium PCA, caprylic/capric triglyceride, carbomer, polysorbate 20;

    d.  Styling gel: sorbitol, polysorbate 20, peg-12 dimethicone, polyacrylate 14, AMP acrylates/allyl methacrylate copolymer, c10-30 alkyl acrylate crosspolymer, panthenol, tetrasodium glutamate diacetate;

    e.  Repairing Vitamin C Serum: tocopheryl acetate, c10-30 alkyl acrylate crosspolymer, phenoxyethanol, ethylhexlglycerin;

    f.  Retinol Facial Serum: tocopheryl acetate, carbomer, polysorbate 20, sodium benzoate, potassium sorbate, ethylhexylglycerin, phenoxyethanol;

    g.  Hyaluronic acid booster: tetrasodium glutamate diacetate, lactic acid;

h. Reliving dandruff shampoo: DL-pantheol, lactic acid, tetrasodium glutamate diacetate, phenoxyethanol, cocamidopropyl betaine;

i. Peptides booster: sodium PCA, caprylyl glycol, glyceryl acrylate;

j. Rejuvenating Anti-Aging Gel Moisturizer: sodium PCA, c10-30 alkyl acrylate cross polymer, sodium lactate, sodium benzoate, potassium sorbate, phenoxyethanol;

k. Acne Controlling Face Wash: tocopherol acetate: disodium laureth sulfosuccinate, disodium lauryl sulfosuccinate, potassium sorbate, sodium benzoate, phenoxyethanol, ethylhexylglycerin, cocamidopropyl betaine;

l. Redefining Anti-Aging Face Wash: sodium methyl 2-sulfolaurate, disodium 2-sulfolaurate, sodium cocoyl isethionate, sodium benzoate, tetrasodium glutamate diacetate, sodium PCA, tocopherol acetate, c10-30 alkyl acrylate crosspolymer, phenoxyethanol, ethylhexylglycerin, cocamidopropyl betaine;

m. Texturizing Sea Salt Spray: DL-panthenol.

n. Rapid Wash for Hair, Body, and Face (all varieties): soium lauryl sulfoacetate, disodium laureth sulosuccinate, phenoxyethanol, tetrasodium glutamate diacetate, decyl glucoside, lauryl glucoside, cocamidopropyl betaine;

o. Daily Strengthening Shampoo: panthenol, sodium lactate, sodium lauryl sulfoacetate, disodium laureth sulfosuccinate, phenoxyethanol, tetrasodium EDTA, cocamidopropyl betaine;

10.    On February 15, 2025, Plaintiff purchased a Hyaluronic Acid Serum Product labeled, marketed, and sold as "All Natural", from. Amazon.com while at his home in Los Angeles County, California

11.    Plaintiff, like any reasonable consumer, understands that products labeled as "All Natural" do not contain synthetic ingredients.

12.    Plaintiff, like any reasonable consumer, did not expect the Product he purchased would contain synthetic ingredients because the Product was labeled as ""All Natural"".

13.    Plaintiff, and reasonable consumers, understand the term "natural" based on common parlance, such that the term natural means something existing in or formed by nature.[1]

14.    Hydrogenation is a synthetic reaction that between hydrogen gas and an unsaturated double bond in a molecule under high pressure in the presence of a metal catalyst.  [2]

15.    Neutralization is a chemical reaction where an acid and a base are reacted to form water and a salt.[3]

16.    Esterification is a chemical reaction which combines an organic acid and an alcohol to produce an ester and water.[4]

17.    Transesterification is defined a synthetic reaction between an ester functional group and an alcohol.

---

[1]    Definition reflecting common parlance found at: https://www.dictionary.com/browse/natural

[2]    Monoj K Gupta, Practical Guide To Vegetable Oil Processing https://www.sciencedirect.com/book/9781630670504/practical-guide-to-vegetable-oil-processing

[3]    Information available at: https://chem.libretexts.org/Bookshelves/Physical_and_Theoretical_Chemistry_Textbook_Maps/ Supplemental_Modules_(Physical_and_Theoretical_Chemistry)/Acids_and_Bases/Acid_Base_R eactions/Neutralization

[4]    Information available at: https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_Chemistry)/Carboxy lic_Acids/Reactivity_of_Carboxylic_Acids/Fischer_Esterification

CLASS ACTION COMPLAINT

EXHIBIT A
PAGE 13

18.     Ethylhexylglycerin is a synthetic ingredient created by catalytic splitting of ethylhexylglycidyl ether, followed by the addition of water.[5]

19.     Decyl glucoside and lauryl glucoside are made from acid catalyzed addition of an alcohol to a glucose.[6]

20.     Phenoxyethanol is produced by the hydroxyethylation of phenol.[7]

21.     Polysorbate 20 is synthetically produced by the ethoxylation of sorbitan monolaurate.

22.     Tetrasodium glutamate dicetate is produced synthetically multiple ways though neutralized monosodium glutamate and neutralized monochloroacetic acid are reacted together to produce the ingredient, while in another second process, monosodium glutamate, hydrogen cyanide, and formaldehyde are reacted together and then saponified with sodium hydroxide to produce the ingredient.[8]

23.     C10-30 akyl acrylate cross polymer is a synthetic polymer produced through free-radical, head-to-tail chain-propagation polymerization.[9]

24.     Sorbitan caprylate is created using a synthetic esterification reaction.[10]

---

[5] Johnson W Jr, Bergfeld WF, Belsito DV, Hill RA, Klaassen CD, Liebler D, Marks JG Jr, Shank RC, Slaga TJ, Snyder PW, Andersen FA. Safety assessment of alkyl glyceryl ethers as used in cosmetics. Int J Toxicol. 2013 Sep-Oct;32(5 Suppl):5S-21S. doi: 10.1177/1091581813497766. PMID: 24174475

[6] Fiume MM, Heldreth B, Bergfeld WF, Belsito DV, Hill RA, Klaassen CD, Liebler D, Marks JG Jr, Shank RC, Slaga TJ, Snyder PW, Andersen FA. Safety assessment of decyl glucoside and other alkyl glucosides as used in cosmetics. *Int J Toxicol*. 2013 Sep-Oct;32(5 Suppl):22S-48S. doi:10.1177/1091581813497764 PMID 24174472

[7] Helmut Fiege; Heinz-Werner Voges; Toshikazu Hamamoto; Sumio Umemura; Tadao Iwata; Hisaya Miki; Yasuhiro Fujita; Hans-Josef Buysch; Dorothea Garbe; Wilfried Paulus (2007). "Phenol Derivatives". *Ullmann's Encyclopedia of Industrial Chemistry*. Weinheim: Wiley-VCH. doi:10.1002/14356007.a19_313. ISBN 978-3-527-30673-2.

[8] Belsito, M. D., et al. "Safety Assessment of Beta-Alanine Diacetic Acid and Tetrasodium Glutamate Dicetate as Used in Cosmetics." (2019).

[9] Fiume MM, Heldreth B, Boyer I, et al. Safety Assessment of Cross-Linked Alkyl Acrylates as Used in Cosmetics. International Journal of Toxicology. 2017;36(5_suppl2):59S-88S. doi:10.1177/1091581817707927

[10] **Sorbitan Caprylate**, *SpecialChem Cosmet. Ingredients* (last visited June 10, 2025), https://cosmetics.specialchem.com/inci-ingredients/sorbitan-caprylate

EXHIBIT A
PAGE 14

25.    Tocopherol acetate is produced from the acetylation of tocopherol with acetic acid.

26.    Potassium Sorbate is produced from the neutralization of sorbic acid with potassium hydroxide.

27.    Sodium benzoate is produced by the neutralization of sodium hydroxide with benzoic acid.[11]

28.    Sodium PCA is made from L-glutamic acid by autoclaving with an equal weight of water at 135-140°C and then reacting with a sodium base like sodium oxide.

29.    Caprylic/capric triglycerides are made from fatty acids and glycerol extracted from coconuts that then undergoes an esterification reaction.[12]

30.    Carbomer is a synthetic polymer made through a multi-step synthesis.[13]

31.    Sorbitol is a synthetic chemical prepared by hydrogenation of starch or glucose syrups.

32.    Peg-12 Dimethicone is made by reacting dimethicone with polyethylene glycol.[14]

33.    Polyacrylate-14 is a synthetic copolymer of acrylic acid and other monomers.[15]

---

[11] Safety Assessment of Benzyl Alcohol, Benzoic Acid and its Salts, and Benzyl Benzoate. Wilbur Johnson, Jr, Wilma F. Bergfeld, Donald V. Belsito, Ronald A. Hill, Curtis D. Klaassen, Daniel C. Liebler, James G. Marks, Jr, Ronald C. Shank, Thomas J. Slaga, Paul W. Snyder, and F. Alan Andersen. International Journal of Toxicology. Volume 36, Issue 3. https://doi.org/10.1177/1091581817728996

[12] **Caprylic/Capric Triglyceride**, *SpecialChem Cosmet. Ingredients* (accessed June 10, 2025), https://cosmetics.specialchem.com/inci-ingredients/caprylic-capric-triglyceride.

[13] **Pat. No. CN 103483491 A** (China Jan. 1, 2014) (filed Sept. 29, 2013), **"Carbomer and Preparation Method Thereof,"** assigned to Guangdong Goscien Technology Co., Ltd.

[14] **PEG-12 Dimethicone**, Ataman Chemicals, *Product Information* (last visited June 10, 2025), https://www.atamanchemicals.com/peg-12-dimethicone_u28834.

[15] **Polyacrylate Crosspolymer-14**, *CosIng—Cosmetic Ingredient Database* (last visited June 10, 2025), https://ec.europa.eu/growth/tools-databases/cosing/details/91405.

34. AMP acrylates/allyl methacrylate copolymer is a synthetic polymer made from the polymerization of allyl methacrylate and acrylates monomers.[16]

35. Panthenol is synthetic. (*R,S*)-Pantolactone (dl-lactone) and aminopropanol are combined at an elevated temperature and then diluted with 1.5% citric acid, after the reaction, to yield dl-Panthenol.[17]

36. Tetrasodium Glutamate Diacetate is a synthetic chemical with a few different synthetic pathways to production. In one synthetic pathway, neutralized monosodium glutamate and neutralized monochloroacetic acid are reacted together to produce the ingredient, while in another second process, monosodium glutamate, hydrogen cyanide, and formaldehyde are reacted together and then saponified with sodium hydroxide to produce the ingredient.[18]

37. Defendant uses manufactured, artificial lactic acid in the Products. Manufactured lactic acid is produced through genetically engineered bacterial fermentation and acid base synthesis. Genetically engineered bacteria are fed a carbohydrate feedstock like glucose or sucrose and excrete lactic acid as a part of their biological metabolic process.[19] Lactic acid is then collected and refined by removing dead bacteria cells through Rotary Drum Vacuum Filter.[20] Lactic acid is then purified and extracted by adding a calcium salt like calcium carbonate $CaCo_3$ (lime, chalk) to cause a spontaneous synthetic acid-base reaction between the calcium carbonate and the lactic

---

[16] **AMP-Acrylates/Allyl Methacrylate Copolymer**, *COSMILE Europe Database* (last visited June 10, 2025), https://cosmileeurope.eu/inci/detail/965/amp-acrylates-allyl-methacrylate-copolyme

[17] Scott LN, Fiume M, Bergfeld WF, et al. Safety Assessment of Panthenol, Pantothenic Acid, and Derivatives as Used in Cosmetics. International Journal of Toxicology. 2022;41(3_suppl):77-128. doi:10.1177/10915818221124809

[18] Belsito, M. D., et al. "Safety Assessment of Beta-Alanine Diacetic Acid and Tetrasodium Glutamate Diacetate as Used in Cosmetics." (2019).

[19] Brin, *Biochem. Prepn.*, **3**, 61 (1953).

[20] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017).

acid.[21] The result of that synthetic reaction is the salt calcium lactate. To purify and successfully convert the calcium lactate to lactic acid an additional industrial chemical, sulfuric acid is added to produce lactic acid and calcium sulfate (gypsum) the gypsum is then collected, and the lactic acid can then be further purified with organic solvents.[22].

38.     Cocamidopropyl Betaine is synthetic surfactant synthesized from coconut oils like lauric acid and dimethylaminopropylamine.[23]

39.     Caprylyl glycol is a synthetic chemical that is made from the oxidation of caprylic acid.[24]

40.     Glyceryl acrylate is synthetically produced from an esterification reaction between glycerin and polyacrylic acid.[25]

41.     Sodium Methyl 2-Sulfolaurate and Disodium 2-Sulfolaurate are synthetic surfactants not found in nature and are synthesized through esterification and sulfonation of lauric acid.[26]

---

[21] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017); A.O. Ojo & O. de Smidt, *Processes*, **11**, 688 (2023).

[22] *Id.*

[23] Christian Nitsch, Hans-Joachim Heitland, Horst Marsen, Hans-Joachim Schlüussler, "Cleansing Agents" in Ullmann's Encyclopedia of Industrial Chemistry, 2005, Wiley-VCH, Weinheim. doi:10.1002/14356007.a07_137

[24] **Craig Bettenhausen**, *Symrise Launches Biobased Caprylyl Glycol*, *Chem. & Eng'g News*, Apr. 23, 2022, vol. 100, no. 14, at —, https://cen.acs.org/materials/biomaterials/Symrise-launches-biobased-caprylyl-glycol/100/i14

[25] **Glyceryl Polyacrylate**, Ataman Chemicals, *Product Information* (last visited June 10, 2025), https://www.atamanchemicals.com/glyceryl-polyacrylate_u23995.

[26] SHI ShuXian1; ZHANG Ding1; XIA YuZheng1; CHEN XiaoNong1; WEN LiJun2. Synthesis of sodium methyl 2-sulfolaurate and its application in acrylate emulsion polymerization. *Journal of Beijing University of Chemical Technology*, 2011, 38(4): 74-78

42.     Disodium laureth sulfosuccinate is synthetic and is made from a reaction between maleic anhydride and fatty alcohol, and esterification of the resulting maleic ester.[27]

43.     Disodium lauryl sulfosuccinate is synthetic and is made from an esterification reaction between lauryl alcohol and maleic anhydride, which is then sulfonated.[28]

44.     Sodium Cocoyl Isethionate is a synthethic ionic surfactant synthesized through an esterification reaction of fatty acids with sodium isethionate.[29]

45.     Tetrasodium EDTA is synthetic and is made from reacting ethylenedamine, formaldehyde, sodium cyanide, and sodium hydroxide.[30]

46.     Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading labels with regards to the contents of the Products.

47.     By making false and misleading claims about the Products, Defendant impaired Plaintiff's ability to choose the type and quality of products he chose to buy.

48.     Therefore, Plaintiff has been deprived of his legally-protected interest to obtain true and accurate information about his consumer products as required by law.

49.     As a result of Defendant's fraudulent labeling, Plaintiff has been misled into purchasing products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would be "All Natural".

///

[27] Disodium Laureth Sulfosuccinate, Fartak Lotus Chemical Industries, *Product Information* (last visited June 10, 2025), https://fartaklotus.com/en/disodium-laureth-sulfosuccinate-en/
[28] **Disodium Lauryl Sulfosuccinate**, *SpecialChem Cosmet. Ingredients* (last visited June 10, 2025), https://cosmetics.specialchem.com/inci-ingredients/disodium-lauryl-sulfosuccinate.
[29] E. C. Britton, A. R. Sexton, **US 2821535** (1958 to Dow); by direct esterification using zinc oxide catalyst
[30] Tetrasodium EDTA, *SpecialChem Cosmet. Ingredients* (last visited June 10, 2025), https://cosmetics.specialchem.com/inci-ingredients/tetrasodium-edta

50.    The following are examples of the Defendant's Product labeling:








EXHIBIT A
PAGE 19



51.     As a result of Defendant's fraudulent labeling, Plaintiff and the Class paid a price premium for a premium "All Natural" Product, but instead received a non-premium Product with synthetic ingredients.

52.     For the Product he purchased, Plaintiff paid $40.00 for one ounce of serum, when competing brands of hyaluronic acid serum without "All Natural" labeling are sold for $22.99 per one ounce of serum.[31]

53.     The Products range in price from approximately $20.00 to upwards of $50.00 per Product, a substantial premium compared to standard cosmetic products without "All Natural" labeling.

54.     Plaintiff and the Class purchased Defendant's Products because Defendant's advertising claimed that the Products were "All Natural".

55.     Due to Defendant's intentional, deceitful practice of falsely labeling the Products as "All Natural" when they are not, Plaintiff did not know that the Product was not "All Natural" when he purchased it.

56.     Plaintiff was unaware that the Product contained synthetic ingredients when he purchased it.

57.     Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they ingest.

58.     Defendant, and not Plaintiff or the Class or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as "All Natural" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products they purchased were not "All Natural" unless Defendant expressly told them.

---

[31] CeraVe Hyaluronic Acid Serum for Face with Vitamin B5 and Ceramides, Hydrating Face Serum for Dry Skin, Fragrance Free, 1 Ounce, *Amazon*, https://www.amazon.com/dp/B07K3261ZD (last visited Apr. 17, 2025)

59.     As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

      a.     Lost money;

      b.     Wasting Plaintiff's time; and

      c.     Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product packaging.

## CLASS ALLEGATIONS

60.     Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the original Complaint through the date of class certification.

61.     Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

62.     Defendant, its employees and agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

63.     The Class is so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and

EXHIBIT A
PAGE 22

believes and thereon alleges that the Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

64.     This suit is properly maintainable as a class action because the Class and Sub-class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

65.     There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

    a.     Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by labeling the Products as "All Natural";

    b.     Whether the Class members were informed that the Products were not "All Natural";

    c.     Whether the Products contain synthetic ingredients;

    d.     Whether Defendant's conduct was unfair and deceptive;

    e.     Whether there should be a tolling of the statute of limitations; and

    f.     Whether the Class is entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

66.     As a resident of the United States and State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

67.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class or Sub-Class.

68.     Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass. Plaintiff has retained attorneys experienced in the prosecution of class actions.

69.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

70.     The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

71.     Plaintiff's claims and injuries are identical to the claims and injuries of all class members, because all claims and injuries of all class members are based on the same fraudulent labeling and same legal theory. All allegations arise from the identical, false, and misleading packaging used by Defendants.

72.    Defendants have acted or refused to act in respect generally applicable to the Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

73.    The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

**FIRST CAUSE OF ACTION**
**Violation of the California False Advertising Act**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**

74.    Plaintiff incorporates by reference each allegation set forth above.

75.    Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

76.    Defendant misled consumers by making misrepresentations about the Class Products, namely, Defendant sold the Products that were fraudulently labeled, and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

77.    Specifically, Defendant sold Products labeled as "All Natural" but which actually contain synthetic ingredients.

78.    Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

79.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's representations regarding the Products, namely that the Products were "All Natural". In reasonable reliance on Defendant's misrepresentations, Plaintiff

and other Class Members purchased the Products.  In turn Plaintiff and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

80.    Plaintiff alleges that these false and misleading representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

81.    Defendant knew that the Class Products did in fact contain synthetic ingredients.

82.    Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained false and misleading statements.

83.    The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION
### Violation of Unfair Business Practices Act
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

84.    Plaintiff incorporates by reference each allegation set forth above.

85.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause

substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

86.     California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

87.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

88.     Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the Class.

89.     Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Products would be "All Natural", in order to induce them to spend money on said Class Products.  In fact, knowing that Class Products, by their objective terms were not "All Natural", unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when

this is typically never the case.  Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

90.    Finally, the injury suffered by Plaintiff and members of the Class are not an injury that these consumers could reasonably have avoided.  After Defendant, falsely represented the qualities of Class Products consumers would receive, the Plaintiff and Class Members suffered injury in fact due to Defendant's sale of Class Products to them.  Defendant failed to take reasonable steps to inform Plaintiff and class members that the Class Products contained synthetic ingredients, including intentionally mislabeling the Products as "All Natural".  As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase products containing fraudulent labels. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

91.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

92.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

93.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

94.    Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products under the basic assumption that they were "All

Natural". Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

95.    As explained above, Defendant deceived Plaintiff and other Class Members by fraudulently labeling the Class Products.

96.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

97.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

98.    As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products as ""All Natural"", when in fact the Products contain synthetic ingredients.

99.    Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

100.    Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*

101.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**MISCELLANEOUS**

102.    Plaintiff and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury as to all claims so triable.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class, requests the following relief:

    (a)    An order certifying the Class and appointing Plaintiff as Representative of the Class;

    (b)    An order certifying the undersigned counsel as Class Counsel;

    (c)    An order requiring Defendant, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

    (d)    An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

    (e)    Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members from the sale of misbranded Class Products during the relevant class period;

    (f)    Punitive damages, as allowable, in an amount determined by the Court or jury;

    (g)    Any and all statutory enhanced damages;

    (h)    All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

    (i)    Pre- and post-judgment interest; and

    (j)    All other relief, general or special, legal and equitable, to which Plaintiff

and Class Members may be justly entitled as deemed by the Court.

Dated:  June 12, 2025                Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC

By: _____

TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff

EXHIBIT A
PAGE 31